1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  PROGRESSIVE CASUALTY
    INSURANCE COMPANY,
12                                   No. 2:12-cv-00713-MCE-CKD
            Plaintiff,
13
        v.                           MEMORANDUM AND ORDER
14
    MICHAEL L. DALTON, et. al.,
15
            Defendants.
16

17
                         ----oo0oo----
18

19      Through this action, Plaintiff Progressive Casualty

20  Insurance Company ("Progressive") seeks a declaratory judgment

21  with respect to the liability insurance policy it issued to

22  Pacific State Bank ("the Bank").

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

                            1

1   Specifically, Progressive asks the Court to find that its policy
2   provides no coverage for a purported $23 million claim asserted
3   by Defendant Federal Deposit Insurance Corporation ("the FDIC")
4   against various Bank Officers and Directors, including Defendants
5   Michael L. Dalton, Harold Hand, Kathleen M. Verner, Patricia A.
6   Hatton, Maxwell L. Freeman, Yoshikazu Mataga, George M.
7   Schofield, Rick Simas, Gary A. Stewart, Russell Munson, Steven
8   Kikuchi, Steve Rosso, Justin Garner, Laura Maffei, and Linda
9   Ogato ("the Directors and Officers").   Moreover, Progressive
10  seeks a judicial declaration of the rights, duties, obligations
11  and interests of all the parties pursuant to the Declaratory
12  Judgment Act ("the Act").   28 U.S.C. § 2201(a) (2006).

13          Presently before the Court are Defendants' Motions to
14  Dismiss Progressive's Complaint for failure to state a claim,
15  pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]
16  Alternatively, Defendants also move the Court to stay
17  Progressive's complaint until any underlying claims between the
18  FDIC and the Directors and Officers are resolved.   The FDIC's
19  motion was filed on June 8, 2011.   (ECF No. 28.)   Director and
20  Officer Defendants Garner, Maffei, Stewart and Rosso filed their
21  motions on June 15, 2012.   (ECF Nos. 32 and 33.)[2]
22  ///
23  ///
24  ///

25  ───────────────

26          [1] All further references to "Rule" or "Rules" are to the
    Federal Rules of Civil Procedure unless otherwise noted.

27          [2] In addition, all Director and Officer Defendants
    subsequently joined in Defendant FDIC's Motion to Dismiss on
28  June 13 and 14, 2012.   (See ECF Nos. 29 and 31.)

1  Although Defendants collectively filed three different motions,
2  the FDIC's motion contains the bulk of Defendants' arguments, and
3  the Directors and Officers incorporate the FDIC's motion either
4  by reference or word-for-word.  Progressive filed a timely
5  opposition to Defendants' motions (ECF No. 53), and the FDIC
6  filed a timely reply (ECF No. 54).  For the reasons set forth
7  below, Defendants' motions are DENIED.[3]

8

9                          **BACKGROUND**[4]

10

11      This action arises from a dispute over insurance coverage.
12  In 2008, Progressive issued a Directors & Officers/Company
13  Liability Policy ("the policy") to the Bank that, including the
14  discovery period, spanned from October 2008 to October 2010.
15  (ECF No. 1 at ¶¶ 22, 23.)  Under the policy, Progressive was
16  required to pay for losses resulting from wrongful acts by the
17  Directors and Officers.  (Id. ¶ 24.)  In August 2010, the Bank
18  was closed, and the FDIC became the Bank's receiver.  (Id. ¶ 1.)
19  In October 2010, the FDIC sent a letter ("the Letter") to
20  Progressive and the Directors and Officers seeking $23 million
21  for losses pertaining to irresponsible business strategies
22  arising from negligence, gross negligence and/or breaches of
23  fiduciary duties by the Directors and Officers.  (Id. ¶ 29.)

24  _____

25      [3] Because oral argument would not be of material assistance,
    the Court ordered this matter submitted on the briefing.  E.D.
26  Cal. Local R. 230(g).

27      [4] The factual assertions in this section are based on the
    allegations in Plaintiff's Complaint unless otherwise specified.
28  (ECF No. 1.)

                                 3

1  Progressive then filed its complaint, requesting a judicial
2  declaration that it has no duty to provide payment for the claims
3  asserted in the Letter.  (Id. ¶ 1.)  The FDIC has yet to commence
4  litigation against the Directors and Officers and states that its
5  investigation is ongoing.

6      According to Progressive, the Letter outlined four bases for
7  the purported $23 million in damages.  (Id. ¶ 30.)  First, the
8  Directors and Officers allegedly displayed imprudent risk
9  management and underwriting standards by becoming overly
10 concentrated in commercial real estate loans.  (Id. ¶ 31.)
11 Second, the Directors and Officers are alleged to have provided
12 insufficient supervision over Bank personnel.  (Id. ¶ 32.)
13 Third, the Bank's poor securities investments led to
14 approximately $5 million in write-downs for which the Directors
15 and Officers are purportedly responsible.  (Id. ¶ 33.)  Fourth,
16 Progressive also cites allegedly inadequate underwriting and
17 credit administration practices that caused over $18 million in
18 charge-offs, and also are allegedly attributable to the Directors
19 and Officers.  (Id. ¶ 34.)

20     Progressive contends that no insurance coverage exists for
21 the FDIC's claims against the Directors and Officers.  (Id. ¶ 1.)
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

4

1   Specifically, Progressive alleges that the $23 million in damages
2   asserted in the Letter falls outside the policy's definition of
3   "loss," and, moreover, that the policy also contains an "Insured
4   vs. Insured" provision that effectively bars coverage of the
5   FDIC's claims.  (<u>Id.</u> ¶¶ 39, 45.)[5]  Under the policy's terms,
6   "loss" does not include "any unpaid, unrecoverable or outstanding
7   loan, lease or extension of credit to any customer or any
8   forgiveness of debt."  (<u>Id.</u> ¶ 39.)  "Loss" also cannot constitute
9   "the depreciation (or failure to appreciate) in value of any
10  investment product, including securities, commodities,
11  currencies, options or futures due to market fluctuations
12  unrelated to any Wrongful Act."  (<u>Id.</u>)  Additionally, the
13  policy's "Insured vs. Insured" provision states that Progressive
14  is not liable for "any payment for Loss in connection with any
15  claim by, on behalf of, or at the behest of the [Bank], any
16  affiliate of the [Bank] or any Insured Person in any capacity."
17  (<u>Id.</u> ¶ 45.)

18      Because "[t]he damages alleged by the FDIC in [the Letter]
19  consist solely of losses based on charge-off loans and write
20  downs on sub-investment quality securities," Progressive states
21  that the Letter "does not involve any damages that could be
22  considered 'loss' covered by the [p]olicy."  (ECF No. 53 at 23.)
23  ///

24  ────────────────
25      [5] It should also be noted that the term "claim" is defined
    to include "a written or oral demand for monetary damages," a
26  definition unquestionably broad enough to include the demands
    contained in the letter.  (ECF No. 1-1 at 11.)  Significantly,
27  too, the letter itself describes its purpose as "to provide
    formal written notice of claims against certain individuals who
28  are former directors and officers of the Bank."  (ECF No. 1-2 at
    2.)

1  Progressive argues that the policy does not cover the write-downs
2  because they are subject to the "loss" exception for investment
3  depreciation caused by market fluctuations unrelated to wrongful
4  acts. (ECF No. 1 at ¶ 41.) Similarly, the charge-offs meet the
5  "loss" exception for unpaid or unrecoverable loans to customers,
6  thus falling outside the policy's scope. (Id. ¶ 40.)
7  Furthermore, Progressive contends that the FDIC, as the bank's
8  receiver, is asserting the Bank's claim against the Directors and
9  Officers. (Id. ¶ 48.) As a result, the FDIC is stepping into
10 the Bank's shoes, and the "Insured vs. Insured" provision
11 prevents the FDIC from pursuing a claim against the Directors and
12 Officers. (Id. ¶ 50.) As indicated above, Defendants' motions
13 to dismiss or stay Progressive's action are now before the Court
14 for adjudication.

15
16                          **MOTION TO DISMISS**
17
18                             **STANDARD**
19
20      On a motion to dismiss for failure to state a claim under
21 Rule 12(b)(6), all allegations of material fact must be accepted
22 as true and construed in the light most favorable to the
23 nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,
24 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and
25 plain statement of the claim showing that the pleader is entitled
26 to relief" in order to "give the defendant fair notice of what
27 the . . . claim is and the grounds upon which it rests."
28 ///

1  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 554-55 (2007) (internal
2  citations and quotations omitted).  Though "a complaint attacked
3  by a Rule 12(b)(6) motion to dismiss does not need detailed
4  factual allegations, a plaintiff's obligation to provide the
5  'grounds' of his 'entitlement to relief' requires more than
6  labels and conclusions, and a formulaic recitation of the
7  elements of a cause of action will not do."  <u>Id.</u> at 555 (internal
8  citations and quotations omitted).

9       A plaintiff's factual allegations must be enough to raise a
10 right to relief above the speculative level.  <u>Id.</u> (citing
11 5 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1216,
12 pp. 235-36 (3d ed. 2004) ("The pleading must contain something
13 more . . . than . . . a statement of facts that merely creates a
14 suspicion [of] a legally cognizable right of action")).

15      Moreover, "Rule 8(a)(2) . . . requires a 'showing,' rather
16 than a blanket assertion of entitlement to relief.  Without some
17 factual allegation in the complaint, it is hard to see how a
18 claimant could satisfy the requirements of providing not only
19 'fair notice' of the nature of the claim, but also 'grounds' on
20 which the claim rests."  <u>Twombly</u>, 550 U.S. at 555, n.3 (internal
21 citations omitted).  A pleading must contain "only enough facts
22 to state a claim to relief that is plausible on its face."  <u>Id.</u>
23 at 570; <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-79 (2009).
24 If the "plaintiffs . . . have not nudged their claims across the
25 line from conceivable to plausible, their complaint must be
26 dismissed."  <u>Twombly</u>, 550 U.S. at 570; <u>Iqbal</u>, 556 U.S. at 680.
27 ///
28 ///

7

1    A court granting a motion to dismiss a complaint must then

2  decide whether to grant leave to amend.  Rule 15(a) empowers the

3  court to freely grant leave to amend when there is no "undue

4  delay, bad faith[,] dilatory motive on the part of the movant,

5  . . . undue prejudice to the opposing party by virtue of . . .

6  the amendment, [or] futility of the amendment. . . ."  Foman v.

7  Davis, 371 U.S. 178, 182 (1962).  However, leave to amend is

8  generally denied when it is clear the deficiencies of the

9  complaint cannot be cured by amendment.  DeSoto v. Yellow Freight

10  Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992); Balistieri v.

11  Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990) ("A

12  complaint should not be dismissed under Rule 12(b)(6) unless it

13  appears beyond doubt that the plaintiff can prove no set of facts

14  in support of his claim which would entitle him to relief.")

15  (internal citations omitted).

16

17                          **ANALYSIS**

18

19    The Act states that "in a case of actual controversy within

20  its jurisdiction . . . any court of the United States, upon the

21  filing of an appropriate pleading, may declare the rights and

22  other legal relations of any interested party seeking such

23  declaration, whether or not further relief is or could be

24  sought."  28 U.S.C. § 2201(a).  Accordingly, the Ninth Circuit

25  has "long held that the district court must first inquire whether

26  there is an actual case or controversy within its jurisdiction.

27  ///

28  ///

8

Second, if the court finds that an actual case or controversy exists, the court must decide whether to exercise its jurisdiction . . . ."  Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005)(internal citation omitted).

### 1.  Existence of Actual Case or Controversy

In the present case, Defendants assert that Progressive's premature pleadings fail to state a claim.  (ECF No. 28 at 2, 7.) Specifically, Defendants note that "the FDIC has not yet completed its investigation, including the calculation of damages."  (ECF No. 28 at 17.)  The FDIC also maintains that until the investigation is finished, "neither the court, nor the [Directors and Officers], nor Progressive knows the full particulars of the FDIC's claim."  (ECF No. 54 at 9.) Progressive responds that "[a]lthough the FDIC's investigation may be ongoing, the FDIC is not considering whether to assert a claim against the Directors and Officers.  It has already done so."  (ECF No. 53 at 12.)  Progressive then states that the Directors and Officers have demanded coverage under the policy and that Progressive seeks adjudication regarding only the wrongdoing already alleged in the Letter.  (Id.)  As delineated above, the Court must consider the factual allegations of Progressive's complaint to be true, and determine whether the facts as pleaded establish a case or controversy.

The Act requires the existence of an actual case or controversy in order for a district court to exercise its subject matter jurisdiction.

1   28 U.S.C. § 2201(a); <u>Principal Life Ins. Co. v. Robinson</u>,

2   394 F.3d 665, 669 (9th Cir. 2005).  However, there is not always

3   a bright line test for determining whether an actual controversy

4   exists under the Act.  <u>MedImmune, Ind. v. Genentech, Inc.</u>,

5   549 U.S. 118, 127 (2007);  <u>Maryland Cas. Co. v. Pac. Coal & Oil</u>

6   <u>Co.</u>, 312 U.S. 270, 273 (1941).  The Supreme Court has stated that

7   the question is essentially "whether the facts alleged, under all

8   the circumstances, show that there is a substantial controversy,

9   between parties having adverse legal interests, of sufficient

10  immediacy and reality to warrant the issuance of a declaratory

11  judgment."  <u>Pac. Coal & Oil Co.</u>, 312 U.S. at 273.  Stated another

12  way, "a justiciable case or controversy exists if a declaration

13  would affect substantive legal rights of the parties."  <u>Mason v.</u>

14  <u>Genisco Tech. Corp.</u>, 960 F.2d 849, 853 (9th Cir. 1992) (citing

15  <u>Hillblom v. United States</u>, 896 F.2d 426, 430 (9th Cir. 1990)).

16  Indeed, the Act's case or controversy requirement is satisfied

17  when the plaintiff has "a real and reasonable apprehension that

18  he will be subject to liability."  <u>Societe de Conditionnement en</u>

19  <u>Aluminum v. Hunter Eng'g Co., Inc.</u>, 655 F.2d 938, 944 (9th Cir.

20  1981).

21      That a defendant's liability may be contingent does not

22  necessarily defeat jurisdiction of a declaratory judgment action,

23  and the Act allows a plaintiff to bring a claim in certain cases

24  of unresolved contingencies.  <u>Bancard Serv., Inc. v. E*Trade</u>

25  <u>Access, Inc.</u>, 292 F. Supp. 2d 1235, 1238 (D. Or. 2003) (citing

26  <u>Assoc. Indem. Corp. v. Fairchild Indus., Inc.</u>, 961 F.2d 32, 35

27  (2d Cir. 1992)).

28  ///

1   The Second Circuit has noted that "litigation over insurance

2   coverage has become a paradigm for asserting jurisdiction despite

3   contingencies that will determine whether a controversy ever

4   becomes real." Id.  Furthermore, the Act may "bring[] to the

5   present a litigable controversy, which otherwise might only be

6   tried in the future." Societe de Conditionnement en Aluminum,

7   655 F.2d at 943.  Parties "whose interests are jeopardized or

8   challenged even before a right of action exists or cause of

9   action accrues" may benefit from a declaratory judgment.

10  Maryland Cas. Co. v. Hubbard, 22 F. Supp. 697, 699 (S.D. Cal.

11  1938).  Indeed, the existence of a cause of action is not

12  essential to a declaration.  Id. at 702.

13      While no clearly-defined and standardized rule exists,

14  courts have found an actual controversy when an insurer seeks a

15  ruling on its obligation to defend the insured in an underlying

16  claim by bringing a declaratory judgment action against its

17  insured. Am. States Ins. Co. v. Kearns, 15 F.3d 142, 144

18  (9th Cir. 1994).  The declaratory judgment action was

19  "sufficiently ripe, even when the underlying liability action in

20  state court had not yet proceeded to judgment." Id.  Moreover,

21  courts have "consistently held that a dispute between an insurer

22  and its insureds over the duties imposed by the insurance

23  contract satisfies Article III's case and controversy

24  requirement." Gov't Emps. Ins. Co. v. Dizol, 133 F.3d 1220 n.2

25  (9th Cir. 1998).

26  ///

27  ///

28  ///

11

1   The present case involves an insurer, Progressive, seeking a

2   declaratory judgment that there is no obligation to provide

3   coverage to the insured, the Directors and Officers, for the

4   damages asserted in the Letter from the FDIC.  (ECF No. 1 at 2.)

5   The court in <u>North River Insurance Co. v. Leffingwell AG Sales</u>

6   <u>Co.</u> considered a similar situation involving an insurance

7   company's duty to defend the insured and held that a "dispute

8   over insurance coverage provides a sufficient basis for an

9   'actual controversy.'  Thus, a controversy exists between the

10  parties."  2011 WL 304579, *3 (E.D. Cal. Jan. 27, 2011).

11  Furthermore, Progressive demonstrates a case or controversy

12  because the Letter requesting at least $23 million in damages

13  could reasonably cause Progressive to believe "that [it would] be

14  subject to liability."  <u>Societe de Conditionnement en Aluminum</u>,

15  655 F.2d at 944.  As indicated above, the Letter by its express

16  terms states its intent as "to provide formal written notice of

17  claims against certain individuals who are former directors and

18  officers of the Bank...."

19      It is also clear that a declaration of the rights, duties,

20  obligations and interests of Progressive and the Directors and

21  Officers would affect the "substantive legal rights of the

22  parties."  <u>Hillblom</u>, 896 F.2d at 430.  Thus, a ruling regarding

23  the rights and interests of Progressive and the Directors and

24  Officers would serve the intended purpose of a declaratory

25  judgment, by clarifying the current uncertainty surrounding the

26  parties' legal relations.

27  ///

28  ///

12

Additionally, this is a case in which an action for a declaratory judgment brings to the present a litigable controversy "which might otherwise be tried in the future," as Progressive may very well seek reimbursement for legal expenses and other costs once any underlying action is resolved.

Accordingly, the Court finds that Progressive has pleaded facts against Defendants sufficient to state a claim or controversy under the Act.

### 2. Decision to Exercise Jurisdiction

Once a district court has determined whether a case or controversy exists under the Act, the court must then determine whether it will exercise its subject matter jurisdiction. Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669. In making this determination, courts generally assess whether there is a parallel state court proceeding and analyze the Brillhart factors. Mitsui Sumitomo Ins. Co. of Am. v. Delicato Vineyards, 2007 WL 1378025, *7 (E.D. Cal. May 10, 2007); Am. Nat'l Prop. & Cas Co. v. Dragonfly Ventures, Inc., 2006 WL 1582300, *2 (E.D. Cal. June 5, 2006). The "Brillhart factors remain the philosophic touchstone for the district court." Gov't Emps. Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998). The Brillhart factors require that in deciding whether to exercise its subject matter jurisdiction, the court should (1) avoid needless determination of state laws; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation.

13

1  See id.; Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491
2  (1942).

3      Additionally, courts may consider whether a declaratory
4  judgement "will settle all aspects of the controversy; . . .
5  serve a useful purpose in clarifying the legal relations at
6  issue; . . . is being sought merely for the purposes of
7  procedural fencing or to obtain a 'res judicata' advantage; or
8  . . . will result in entanglement between the federal and state
9  court systems." Dizol, 133 F.3d at 1225 n.5.  The Brillhart
10  factors, as well as these supplemental considerations, "balance
11  the concerns of judicial administration, comity, and fairness to
12  the litigants." State Farm Fire & Cas. Co. v. McIntosh,
13  837 F. Supp 315, 316 (N.D. Cal 1993).  The Court will now address
14  each of those factors in turn.

15

16          **A.   Parallel State Court Proceeding**

17

18      While it is undisputed that there is no underlying state
19  court action, the FDIC asserts that "[t]he existence of a
20  parallel state court proceeding is not a prerequisite for this
21  Court to abstain from exercising its discretion." (ECF No. 54 at
22  6.)  Instead, "the mere potential for [a parallel action] suffices."
23  (ECF No. 28 at 11.)  Progressive counters that the Court should
24  decide this declaratory judgment action because not only has the
25  FDIC declined to bring a parallel proceeding, but "[n]either the
26  FDIC nor the Directors and Officers have filed or expressed any
27  intention to file litigation in state court concerning the coverage
28  issues presented by this matter." (ECF No. 53 at 15-16.)

                            14

1    "[W]hen a party requests declaratory relief in federal court
2    and a suit is pending in state court presenting the same state
3    law issues, there exists a presumption that the entire suit
4    should be heard in state court."   Chamberlain v. Allstate Ins.
5    Co., 931 F.2d 1361, 1366-67 (9th Cir. 1991).   However, cases "'in
6    which there are no parallel state court proceedings,' lie at the
7    'outer boundaries' of the district court's discretion under the
8    [] Act."   Maryland Cas. Co. v. Knight, 96 F.3d 1284, 1289 (9th
9    Cir. 1996) (citing Wilton v. Seven Falls Co., 515 U.S. 277, 290
10   (1995)).   Furthermore, courts have exercised jurisdiction over a
11   declaratory judgment action when the state court action was filed
12   less than a month after the federal court action.   Aetna Cas. &
13   Sur. Co. v. Merritt, 974 F.2d, 1196, 1198-99 (9th Cir. 1992).

14        In the present case, the lack of an underlying court action
15   establishes that no parallel state court proceeding exists.
16   Furthermore, because the FDIC is not expected to name Progressive
17   as a party in an underlying claim, the Court finds that a
18   parallel action is highly unlikely.   Although the Court's
19   authority to entertain a declaratory judgment action does not
20   turn solely on whether or not a parallel proceeding has been
21   filed, in the absence of exceptional circumstances, the Court
22   declines to invoke the "outer boundaries" of its discretion.
23   Moreover, Defendants fail to provide evidence of a "pending or
24   impending [lawsuit] at the time the federal action was filed."
25   Knight, 96 F.3d at 1289.   In fact, Defendants continue to offer
26   insufficient proof of a future court action, even though more
27   than six months have lapsed since Progressive first filed its
28   complaint.

15

Therefore, the lack of a parallel state court proceeding weighs in favor of the Court retaining jurisdiction.

## B.    Avoid Needless Determination of State Laws

In considering this factor, courts often examine whether adjudicating the declaratory judgment action will require the determination of novel questions of state law.  Carolina Cas. Ins. Co. v. Bolling, Walter & Gawthrop, 2005 WL 1367096, *5 (E.D. Cal. May 31, 2005).  While the interpretation of an insurance policy "is governed by state law, the principles of contract interpretation are well settled, and [a federal district] court is an appropriate forum to adjudicate [the] matter."  Mitsui Sumitomo Ins. Co. of Am., 2007 WL 1378025, *6.

The present case essentially involves a determination of whether the insurance policy issued to the Directors and Officers provides coverage for the alleged $23 million in losses claimed in the Letter.  This evaluation should involve a relatively straightforward analysis of the policy, without infringing on novel state law issues.  Furthermore, Defendants fail to provide evidence that any other court is presently ruling on this matter. As a result, this Brillhart factor weighs in favor of the Court retaining jurisdiction.

///

///

///

///

///

16

## C.   Discourage Litigants from Filing Declaratory Actions as a Means of Forum Shopping

Defendants argue that Progressive's declaratory judgment action is simply a reactive suit designed to forum shop and secure a 'res judicata' advantage.  (ECF No. 28 at 13.) Defendants further allege that they could not resolve this claim in a manner of their choosing because Progressive raced to the courthouse to file this action.  (Id.)  "This factor is usually understood to favor discouraging an insurer from forum shopping, i.e., filing a federal court declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action."  Am. Cas. Co. v. Krieger, 181 F.3d 1113, 1119 (9th Cir. 1999).  Moreover, "[a] declaratory judgment action by an insurance company against its insured during the pendency of a non-removable state court action presenting the same issues of state law is an archetype of what we have termed 'reactive' litigation."  Continental Cas. Co. v. Robsac Indus., 947 F.3d 1367, 1372 (9th Cir. 1991) (overruled on other grounds).  However, even when the underlying claim and the federal declaratory judgment action are based on similar facts, the court may find enough differences to conclude that the declaratory judgment action is not reactive.  Nat'l Union Fire Ins. Co. v. NVIDIA Corp., 2009 WL 2566719, *5 (N.D. Cal. Aug. 18, 2009).

Progressive's declaratory judgment action is not the result of forum shopping.

///

17

All parties acknowledge that the FDIC has yet to file a lawsuit
in state court, demonstrating both that Progressive is not a
party in an underlying lawsuit and that the coverage issues
before the Court are not being litigated in any other forum.
Additionally, the FDIC claims that it has not completed its
investigation, implicitly recognizing that even if there will be
an underlying lawsuit, it likely will not be filed in the near
future.

The declaratory judgment action is also not reactive.
Reactive lawsuits entail filing a federal court action to preempt
a non-removable state court action, with both lawsuits generally
involving identical state law issues.  As discussed above, there
is no underlying state court lawsuit, and the evidence militates
against any finding that Progressive knew the FDIC would file a
non-removable state court action.  Significantly, more than a
year lapsed between the time the FDIC sent the Letter and
Progressive's filing of this declaratory judgment action.  As
such, the FDIC had sufficient time to file a lawsuit, and there
is accordingly no viable claim that Progressive participated in a
race to the courthouse.

In a similar action regarding insurance coverage, the court
found that the "[insurer's] claim [was] not reactive as it [did]
not present any of the same issues involved in the [underlying]
action.  In the latter case, the two causes of action [were]
malpractice and breach of the legal services contract.  By
contrast, this [declaratory judgment action] require[d]
interpretation of an entirely different contract."  Carolina Cas.
Ins. Co., 2005 WL 1367096, *5.

18

1  Accordingly, even if the FDIC files a lawsuit or pursues an

2  underlying action, the Letter indicates that the causes of action

3  against the Directors and Officers will likely include

4  negligence, gross negligence and breach of fiduciary duty.  In

5  contrast, Progressive's declaratory judgment action requires

6  interpreting an insurance policy to see whether the policy covers

7  the alleged $23 million in losses.

8       Thus, while some of the basic information involved in this

9  declaratory judgment action may overlap with an underlying claim

10 or a future lawsuit, Progressive's action regarding coverage

11 issues will raise the subject of policy interpretation and will

12 not adjudicate an underlying action's disputed facts.  The Court

13 will examine contract law to interpret the policy's language, and

14 this inquiry is separate from whether the Directors and Officers

15 negligently performed their duties.  Furthermore, any future

16 action between the FDIC and the Directors and Officers will not

17 hinge on the legal findings involved in resolving this

18 declaratory judgment action's coverage questions.  Likewise, an

19 underlying action against the Directors and Officers for

20 negligence and breach of fiduciary duty will not resolve coverage

21 questions.  "[B]ecause the same issues [would not be] involved in

22 the state court and federal court proceedings," Progressive's

23 lawsuit should not be deemed reactive.  Am. Nat'l Prop. & Cas

24 Co., 2006 WL 1582300, *4.  Therefore, this Brillhart factor

25 weighs in favor of the Court retaining jurisdiction.

26 ///

27 ///

28 ///

1              D.    **Avoid Duplicative Litigation**

2

3        Considerations of judicial economy and avoiding duplicative

4   litigation are particularly relevant to this factor.  <u>Continental</u>

5   <u>Cas. Co.</u>, 947 F.2d at 1373.  Once a court is prepared to rule on

6   fully briefed motions, if the court "were to abstain, [the

7   insurer] would be required to start over by filing a new

8   complaint in state court, which would needlessly delay resolution

9   of the issues presented, and would require the state court to

10  expend time and resources becoming familiar with the factual and

11  legal issues involved."  <u>Carolina Cas. Ins. Co.</u>, 2005 WL 1367096,

12  *6.

13       Similarly, should the Court decline to exercise jurisdiction

14  in this case and leave undetermined Progressive's rights and

15  obligations with respect to the FDIC's $23 million claim against

16  the Directors and Officers, Progressive may still bring an action

17  for a declaratory judgment at a later date.  Additionally,

18  because any potential future court action as to the Directors and

19  Officers will undoubtedly involve causes of action unrelated to

20  the issues presented in this declaratory judgment action, the

21  risk of duplicative litigation is minimal.  As a result, the

22  Court determines that this <u>Brillhart</u> factor weighs in favor of

23  the Court retaining jurisdiction.

24  ///

25  ///

26  ///

27  ///

28  ///

20

1              **E.    Additional Considerations**

2

3       In exercising discretion over whether or not to entertain a

4  declaratory judgment action, courts are permitted to take into

5  account the additional considerations mentioned above.  <u>Dizol</u>,

6  133 F.3d at 1225 n.5.  Because Defendants claim that

7  Progressive's declaratory judgment action will negatively impact

8  settlement negotiations and prevent the parties from controlling

9  their own claims, Defendants implicitly allege that Progressive's

10 action does not serve the useful purpose of clarifying the

11 parties' legal relations.[6]  (ECF No. 28 at 12.)  Defendants

12 contend that, through this action, Progressive can "potentially

13 and (negatively) affect the outcome of any resolution between the

14 FDIC and the [Directors and Officers]" by "forcing an 'on the

15 cheap' settlement by pointing to a potential ruling of no

16 coverage."  (<u>Id.</u> at 14.)

17      "[O]n the other hand, resolution of a coverage dispute could

18 resolve legal questions which could ultimately facilitate

19 settlement."  <u>Evanston Ins. Co. v. Barkandbrew, Inc.</u>, 2010 WL

20 25732209, *4 (S.D. Cal. June 22, 2010).  Furthermore, "a decision

21 on the coverage action could very well break the apparent

22 stalemate in settlement discussions because the parties and the

23 insurer . . . will know the sum available for settlement."

24 ///

25 ///

26 ─────────────

27      [6] Defendants put forth several additional arguments as to
   why the Court should not exercise jurisdiction over Progressive's
   declaratory judgment action.  After examining Defendants'
28 theories, the Court finds them unpersuasive.

1  (Id.)  When the insurer and the insured encounter a disagreement

2  about coverage, adjudicating each party's obligations is an

3  important means of determining which party is ultimately

4  responsible and thus bears the risks inherent in any settlement.

5  Am. Nat'l Prop. & Cas Co., 2006 WL 1582300, *4.

6      While the Court is cognizant that Progressive's declaratory

7  judgment action could indeed hinder settlement negotiations

8  between the FDIC and the Directors and Officers, the Court agrees

9  with Progressive that this action may also encourage negotiations

10  by "clarify[ing] the collectability of a judgment and assist[ing]

11  with the parties' evaluation of the claim for pre-suit settlement

12  negotiations." (ECF No. 53 at 21.)  Additionally, once the Court

13  decides the fundamental aspect of financial responsibility for

14  the alleged damages, the parties will be able to enter into more

15  meaningful and productive settlement discussions.  Especially in

16  light of Defendants' own admission that investigation is ongoing,

17  a resolution of the coverage issue at this juncture may very well

18  help guide the FDIC's inquiries and negotiations.

19      In addition, Defendants allege that Progressive's

20  declaratory judgment action encumbers their ability to control

21  their own claims. (ECF No. 28 at 12.)  The FDIC further

22  expresses concern that Progressive's action forces the plaintiff

23  and defendant to reverse roles. (ECF No. 54 at 7.)  Those

24  hypothetical concerns fail to convince the Court that it should

25  abstain from jurisdiction.  Progressive's action does not alter

26  the FDIC's ability to seek legal redress against the Directors

27  and Officers.

28  ///

22

1 | Moreover, Progressive only requests adjudication regarding the
2 | damages put forth in the Letter and does not ask the Court to
3 | issue a ruling on all possible future claims.  Furthermore,
4 | Progressive waited over a year before filing this declaratory
5 | judgment action, more than enough time for the FDIC to file a
6 | lawsuit against the appropriate parties.  Although the Court
7 | acknowledges that Progressive's declaratory judgment action will
8 | not settle all aspects of the controversy, the Court is confident
9 | that Progressive's action will serve a useful purpose in
10 | clarifying the legal relations at issue.  Thus, the Court
11 | determines that this consideration weighs in favor of the Court
12 | retaining jurisdiction.

13 | Because Progressive states an actual case or controversy and
14 | the Brillhart factors and other considerations weigh in favor of
15 | the Court exercising jurisdiction over this action, Progressive
16 | has adequately stated a claim for a declaratory judgment action.
17 | Therefore, Defendants' Motions to Dismiss pursuant to Rule
18 | 12(b)(6) are DENIED.

19 |
20 | **MOTION TO STAY**
21 |
22 | **STANDARD**
23 |
24 | "[T]he power to stay proceedings is incidental to the power
25 | inherent in every court to control disposition of the cases on
26 | its docket with economy of time and effort for itself, for
27 | counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248,
28 | 254 (1936).

1  "This rule applies whether the separate proceedings are judicial,

2  administrative, or arbitral in character, and does not require

3  that the issues in such proceedings are necessarily controlling

4  of the action before the court." Levya v. Certified Grocers of

5  Cal., Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979), cert. denied,

6  444 U.S. 827 (1979).  "The exertion of this power calls for the

7  exercise of sound discretion." CMAX, Inc. v. Hall, 300 F.2d 265,

8  268 (9th Cir. 1962).  A federal district court has broad

9  discretion in deciding whether to issue a stay, and the court's

10 decision will not be reversed unless it has abused its

11 discretion.  Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d

12 899, 902 (9th Cir. 1989).

13

14                          **ANALYSIS**

15

16      Under California law, when an insurer seeks a declaratory

17 judgment under an insurance policy and there is an underlying

18 third-party action against the insureds, a stay of the

19 declaratory judgment action pending resolution of the underlying

20 third-party suit is appropriate "when the coverage question turns

21 on facts to be litigated in the underlying action." Montrose

22 Chem. Corp. v. Super. Ct. (Montrose I), 861 P.2d 1153, 1162

23 (1993).  Granting a stay in such cases serves to "eliminate the

24 risk of inconsistent factual determinations that could prejudice

25 the insured." Id.  Such factual inconsistencies may arise

26 "because the [insurer's] duty to defend frequently turns on

27 coverage, and . . . coverage frequently turns on factual issues

28 to be litigated in the third party liability action."

24

1   <u>Montrose I</u>, 861 P.2d at 1164.  Federal courts in California have

2   followed the <u>Montrose</u> rule.  <u>OneBeacon Ins. Co. v. Parker, Kern,</u>

3   <u>Nard & Wenzel</u>, 2009 WL 2914203, *4 (E.D. Cal. Sept. 9, 2009)

4   (citing <u>Cort v. St. Paul Fire & Marine Ins. Cos.</u>, 311 F.3d 979

5   (9th Cir. 2002); <u>Conestega Servs. Corp. v. Exec. Risk. Indem.</u>,

6   312 F.3d 976 (9th Cir. 2002)).

7       Courts have noted three major concerns surrounding the trial

8   of coverage issues which necessarily turn upon the facts to be

9   litigated in the underlying action.  First, the insurer, who is

10  supposed to be defending the insured and with whom the insured

11  has a special relationship, is effectively attacking its insured

12  and thus aiding the claimant in the underlying suit.  <u>Haskel,</u>

13  <u>Inc. v. Super. Ct.</u>, 33 Cal. App. 4th 963, 979 (1995) (citing

14  <u>Montrose Chem. Corp. v. Super. Ct.</u> (<u>Montrose II</u>), 25 Cal. App.

15  4th 902, 910 (Cal. App. 4th 1994)).  Second, litigating the

16  coverage dispute while the underlying action is still pending

17  requires the insured to "fight a two front war, litigating not

18  only with the underlying claimant, but also expending precious

19  resources fighting an insurer over coverage questions."  <u>Haskel,</u>

20  <u>Inc.</u>, 33 Cal. App. 4th at 979 (citing <u>Montrose II</u>, 25 Cal. App.

21  4th at 910).  Third, "there is a real risk that, if the

22  declaratory relief action proceeds to judgment before the

23  underlying action is resolved, the insured could be collaterally

24  estopped to contest issues in the latter by the results in the

25  former."  <u>Id.</u> (citing <u>Montrose II</u>, 25 Cal. App. 4th at 910).

26  ///

27  ///

28  ///

25

"It is <u>only</u> when there is no potential conflict between the trial of the coverage dispute and the underlying action that an insurer can obtain an early trial date and resolution of its claim that coverage does not exist." <u>Montrose II</u>, 25 Cal. App. 4th at 910 (emphasis added).  When such a potential conflict exists, a district court should enter a stay.  "By contrast, when the coverage question is logically unrelated to the issues of consequence in the underlying judgment, the declaratory relief action may properly proceed to judgment." <u>Montrose I</u>, 861 P.2d at 1162.

In the present case, the FDIC has not filed an underlying lawsuit, but the Letter sent to Progressive and the Directors and Officers requests payment for damages. (ECF No. 1 at 5.)  While the FDIC attributes the damages to negligence and breaches of fiduciary duty by the Directors and Officers in relation to imprudent business strategies, the Letter actually allocates the $23 million in losses to write-downs and charge-offs involving loans and investments. (<u>Id.</u> at 5-7.)  In response to the FDIC's claim that its investigation is still underway, Progressive states that it only asks for a declaratory judgment regarding the damages already sought in the Letter. (ECF No. 53 at 12.)

///
///
///
///
///
///
///

26

1       Defendants allege that Progressive's declaratory judgment

2  action overlaps with any underlying claim, and, as a result, this

3  Court will be forced to resolve factual issues that are

4  intertwined with the FDIC action against the Directors and

5  Officers.[7]  In order to establish the negligence and breach of

6  fiduciary duty discussed in the Letter, the FDIC will need to

7  prove that the Directors and Officers had a duty regarding the

8  Bank and its assets, breached that duty, and caused the alleged

9  damages through that breach.  Presumably, the Directors and

10  Officers will rely on disputed facts, information and documents

11  to demonstrate that they performed their responsibilities

12  properly and lawfully.  Their behavior and knowledge will be

13  crucial elements of the potential underlying claim.  The

14  Directors and Officers may also argue that currently unnamed

15  third parties were involved in the alleged damages.

16       Progressive, on the other hand, asserts that it will only

17  litigate two coverage issues in this declaratory judgment action.

18  First, the losses articulated in the Letter do not fall within

19  the definition of "loss" as defined in the policy.  (ECF No. 1 at

20  7-8.)  Second, the policy's Insured vs. Insured clause permits

21  Progressive to avoid liability for the FDIC's claims, as the

22  bank's receiver, against the Directors and Officers.  (Id. at

23  9-10.)

24  ///

25  ///

26

27      [7] Although the Court has duly considered Defendants' various
    arguments supporting their Motions for Stay, these arguments do
28  not convince the Court that a stay is warranted.

1    According to Progressive, the "declaratory judgment action
2    presents threshold coverage issues that can be resolved by
3    comparing the pertinent terms of the [p]olicy to the allegations
4    [in the Letter]." (ECF No. 53 at 23.) As such, Progressive
5    contends that adjudicating the policy's terms will not affect
6    Defendants' potential future actions against each other.
7    Progressive further claims that these coverage issues can be
8    decided without litigating any of the underlying action's
9    disputed items. (Id.)

10       Because the limited issues asserted in this declaratory
11   judgment action are separate from any underlying claim between
12   the FDIC and the Directors and Officers, the Court can adjudicate
13   the issues in this action without rendering conclusions regarding
14   an underlying action. As the court in Allstate Insurance Co. v.
15   Huerta noted under analogous circumstances, "[t]he extent of
16   coverage does not depend on whether defendants are found liable
17   in the underlying action. The declaratory judgment action simply
18   seeks a determination as to whether the allegations in the
19   underlying action are of the nature intended to be covered by the
20   insurance policy." 2006 WL 2655239, *3 (E.D. Cal. Sept. 13,
21   2006). The court went on to state that "the underlying action
22   turns on factual questions relating to liability . . . [that] are
23   not present in the action for declaratory relief." Id.
24   Similarly, Progressive only seeks a determination as to whether
25   the policy encompasses the damages alleged in the Letter, and
26   Progressive takes no position on an underlying claim.
27   ///
28   ///

Moreover, while the Court's analysis of the policy involves legal conclusions, resolution of a claim against the Directors and Officers will require factual determinations.  Because the coverage issues do not turn on an underlying action's liability questions, this Court can adjudicate the coverage obligations without impeding any underlying claim.

Additionally, in <u>Century Surety Co. v. Byal</u>, involving an insurance company's coverage obligations, the court denied a motion to stay after finding that "the issues in [the declaratory judgment action] and the [underlying] actions [were] sufficiently distinct such that no competing factual or legal determinations [were] likely."  2001 WL 2550832, *4 (N.D. Cal. June 27, 2011). Here, the Court can also premise its decision on uncontroverted facts wholly unrelated to potential future litigation or an underlying action between the FDIC and the Directors and Officers.  Litigating whether the policy covers the damages alleged in the Letter will not require litigating whether the Directors and Officers engaged in unlawful conduct.  Thus, the Court can resolve the declaratory judgment action by interpreting the policy's terms and examining the damages sought in the Letter.  In doing so, the Court need not inquire into the possible negligence or breach of fiduciary duty by the Directors and Officers.

Furthermore, because the Court does not find a conflict between the declaratory judgment action and an underlying action, the concerns that generally favor the Court granting a motion to stay are not present in this case.

///

1   First, the Court is not persuaded that Progressive will attack

2   the Directors and Officers and offer aid to the FDIC in an

3   underlying action.  Progressive appears to assert no position

4   regarding claims by the FDIC against the Directors and Officers.

5   Second, the present situation will not require the Directors and

6   Officers to fight a two-front war.  This concern is most

7   prevalent when a contemporaneous state lawsuit has been filed,

8   unlike the declaratory judgment action at hand.  Third, the Court

9   does not find that this declaratory judgment action will

10  collaterally estop the FDIC and Directors and Officers from

11  contesting issues in an underlying action.  The Directors and

12  Officers are not only able to argue that the $23 million in

13  losses is covered by the insurance policy while at the same time

14  not admitting to the truth of the underlying action, but "the

15  mere possibility of collateral estoppel does not justify a stay

16  of the declaratory proceeding." M.D. Sass Investors Servs.,

17  Inc. v. Reliance Ins. Co., 810 F. Supp. 1082, 1090 (N.D. Cal.

18  1992).

19       Additionally, while "[a] stay should not be granted unless

20  it appears likely that the other proceedings will be concluded

21  within a reasonable time," the FDIC has yet to even finish its

22  investigation, let alone file a lawsuit.  See Levya v. Certified

23  Grocers, Ltd., 593 F.2d 857, 864 (9th Cir. 1979).

24       Given the foregoing, the Court does not find a potential

25  conflict between the trial of the coverage dispute in this Court

26  and a potential underlying action.  Because the coverage question

27  can be resolved without litigating facts that may be disputed in

28  an underlying action, Defendants' Motions to Stay are DENIED.

**CONCLUSION**

As a matter of law, and for the reasons set forth above, Defendant's Motions to Dismiss Plaintiff's Complaint, which alternatively request a stay of these proceedings (ECF Nos. 28, 32 and 33), are DENIED.

IT IS SO ORDERED.

Dated: December 6, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE